Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7439 | **DATE** | 12/28/2004 |
| **CASE TITLE** | Teldata Control, Inc. vs. County of Cook | | |

| MOTION: | [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.] |
|---|---|
| | |

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants in part and denies in part both parties' motions for summary judgment (21-1, 28-1). The case is set for a status hearing on January 10, 2005 at 9:30 a.m. Principal counsel for both sides are directed to appear at the status hearing.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | DEC 3 0 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | | 33 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT C... | | | |
| | OR | courtroom deputy's initials | 2004 DEC 29 PM 4:18 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TELDATA CONTROL, INC., )
)
        Plaintiff, )
)
vs. ) Case No. 02 C 7439
)
COUNTY OF COOK, )
)
        Defendant. )

DOCKETED
DEC 3 0 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Teldata Control, Inc. has sued Cook County for payments Teldata claims are due under a contract between the two parties under which Teldata agreed to audit the County's telephone charges and secure refunds from telecommunications providers (primarily SBC Communications, Inc.) where available, in return for commissions on refunds it secured. Teldata makes claims for breach of contract for known credits obtained by the County (Count 1), an accounting for additional credits that were obtained or may be obtained in the future (Count 2), breach of good faith and faith dealing (Count 3), and *quantum meruit* (Count 4).

The contract included a term providing that disputes concerning unresolved questions of fact would be submitted to the County's purchasing agent for determination as a condition precedent to suit. *See Teldata Control, Inc. v. County of Cook*, No. 02 C 7439, 2003 WL 1873921 (N.D. Ill. Apr. 14, 2003) (staying lawsuit and ordering arbitration). The purchasing agent, assisted by an outside attorney, held a hearing and issued a twenty-one page report. Both sides have moved for summary judgment.

33

**Background**

Teldata is a New Jersey corporation that provides consulting services for the management of voice, data, and information services. In January 2001, it entered into a written contract with Cook County to identify and secure refunds for erroneous billing from telecommunications service providers and identify cost saving opportunities for the County. Report at 3. The contract provided that Teldata would be paid 34% of the first $100,000 of refunds received by the County as a result of billing errors discovered by Teldata and 32% of all such refunds thereafter. *Id.* at 5; Contract ¶ IV.

The contract stated that it would commence on the date it was approved by the County Board of Commissioners, January 23, 2001, and continue "until all obligations set forth in this Contract are complete," but that Teldata would use best efforts to complete its obligations within one year. Report at 3, 6; Contract ¶ III.

The contract provided that Teldata would be in default "in the event of a material breach ... where [Teldata] has failed to cure such breach within ten (10) days after written notice is given to [Teldata] by County, setting forth the nature of such breach." Contract ¶ GC-31. The County was entitled to withhold payments following notice of a material breach until it was cured. Contract ¶ GC-32. If Teldata failed to cure a material breach following notice, the County had the right to terminate the contract on five days notice. *Id.*

The contract also contained a provision entitled "termination for convenience," which permitted the County to terminate the contract at any time on written notice to Teldata. Contract ¶ GC-35. In the event of a termination under this provision, the County agreed that "[p]ayment for the work performed before the effective date of such termination shall be based upon an

estimate of the services/goods actually performed/supplied by [Teldata] to the date of termination." *Id.*

The contract also included an agreement by the County, in the event of a termination, "to compensate [Teldata] for all applications for refunds submitted by Teldata to the telecommunications service providers prior to such termination date," so long as Teldata provided documentation substantiating the amounts of such refunds received and verification that erroneous billing had been corrected from subsequent bills. Report at 7; Contract ¶ III. Neither side has attempted to reconcile this provision with the "termination for convenience" provision referenced above.

On April 1, 2002, the County sent notice to Teldata terminating the contract. The letter stated that

> [t]he contract between Cook County and Teldata Control, Inc. dated January 21, 2001, has ended. Teldata has completed its obligations under the contract and the one year term of the contract has expired. Cook County will now begin the process of totaling the refunds received by Cook County from SBC on behalf of Cook County to determine the commission due Teldata based on the percentage in the contract.

Pl. Ex. 31; *see* Def. Resp. to Pl. LR 56.1 Stmt. ¶ 56.[1] On April 12, 2002, Teldata requested payment on nine identified applications for refunds it had submitted on the County's behalf prior to the termination. On July 16, 2002, the County sent Teldata a letter stating that it had calculated the commission due as $351,803.46 and asked Teldata to send an invoice in that amount. Pl. Ex. 39. On July 22, 2002, Teldata sent the County an invoice in that amount along with a letter stating that it "still seeks the opportunity to validate that all the credits were properly

---

[1] The purchasing agent did not quote the letter in his report, but its contents are not a disputed fact that he had to determine.

3

posted to the County's bills." Pl. Ex. 40. On September 16, 2002, the County paid the amount by check. Report at 17.

The purchasing agent found that as of December 14, 2001, SBC had provided the County with credits totaling $3,072,066, based on a letter from SBC bearing that date. Report at 13. The purchasing agent noted that Teldata contended the County had received credits totaling $3,063,145 and claimed it was owed, on those credits, $630,402.94 beyond what it had already been paid. Report at 18-19. The purchasing agent also noted that the County had acknowledged receiving from SBC credits totaling $2,697,587. Report at 19. He did not explain the discrepancies among the various figures and did not attempt to reconcile them.

Though the County similarly admitted in its Local Rule 56.1 response that it had received credits of $2,697,587, see Def. Resp. to Pl. LR 56.1 Stmt. ¶ 33, it also admitted – in the ensuing paragraph of the Local Rule 56.1 response – receiving $2,863,765 in credits as of November 19, 2001. See id. ¶ 34. The County, like the purchasing agent, has made no attempt to reconcile the inconsistent figures.[2] Assuming the County is correct in its citation of the lower figure, Teldata would be owed, on the credits SBC has given, $513,424.38 in commissions beyond the $351,803 already paid ($34,000 on the first $100,000 in credits, plus $831,227.84 on the remaining $2,697,587, less the $351,803 previously paid), unless the County prevails in its defense against Teldata's claims. If the purchasing agent's larger figure is correct and relates entirely to services within the contract's scope, Teldata would be owed $633,258 beyond the amount already paid

---

[2] It is conceivable that the difference may be attributable to the fact that some portion of the larger figure may consist of credits given to the Forest Preserve District, which the County contends was outside the scope of the Teldata contract. Cf. Def. Resp. to Pl. LR 56.1 Stmt. ¶ 39 (which refers to credits outside the scope of the contract but does not suggest this explains the competing figures).

($34,000 on the first $100,000 in credits, plus $951,061.12 on the remaining $2,972,066, less the $351,803 previously paid).

Teldata contends that it is owed at least this amount, and a good deal more. In this suit, it claims that in the course of its audit of the County's billings, it determined that the County was entitled to a significant additional discount from SBC that had not been paid. Compl. ¶¶ 14-15. Teldata says that it sought more information from the County to permit the extent of the amount due so that it could pursue the matter with SBC, but the County, seeing (Teldata alleges) an opportunity to obtain a refund without paying part of it to Teldata, deprived Teldata of the necessary information and began to conduct discussions directly with SBC. *Id* ¶¶ 16-18. Teldata's representatives were invited by the County to attend a meeting with SBC on January 14, 2002, and at the meeting, Teldata alleges, SBC acknowledged that it had overbilled the County. *Id* ¶¶ 19-20. But Teldata alleges that the County cut it out of subsequent meetings and that SBC likewise refused to speak with Teldata's representatives. *Id* ¶¶ 21-23.

Teldata contends that just a few days after the January 14 meeting, SBC made a written proposal directly to the County to settle all overcharge claims by giving the County a credit of $6,563,161, including the $3,063,145 SBC said it had already provided, plus $3,500,616 in additional credits. *See* Def. Resp. to Pl. LR 56.1 Stmt. ¶ 48. This proposal was not disclosed to Teldata until after this lawsuit was commenced. In response to the proposal, the County made a demand in October 2002 for a total of $8.5 million in credits, and SBC replied in December 2002 with an enhanced offer of approximately $7.5 million, including the just over $3 million in credits it had already provided. Report at 17. Teldata was likewise unaware of this exchange until after it filed this suit. As of the present date, the matter has not yet been completely

5

resolved between SBC and the County.

In addition to the unpaid commissions on the credits SBC has already given, Teldata seeks to recover commissions on the additional $4,436,855 that it contends the County would receive under SBC's most recent offer. Report at 19. According to the purchasing agent, of the additional credits offered by SBC in its December 2002 proposal, the County contends that about ten percent, or about $450,000, is attributable to Teldata's efforts. *Id.*

The purchasing agent made no findings bearing on the amount of the proposed credits that might properly be attributed to Teldata. He did, however, find unsupported Teldata's contentions that the County prevented it from performing its contractual obligations and had deliberately schemed to exclude Teldata from the SBC discussions to limit its commission. Report at 18.

## Discussion

The Court may grant summary judgment on a particular claim only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering each party's motion for summary judgment, the Court views the facts in the light more favorable to the non-moving party and draws reasonable inferences in that party's favor. *E.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### 1. County's motion for summary judgment

The County seeks summary judgment on Teldata's breach of contract claim, arguing that Teldata failed to substantially perform its obligations under the contract and thus is not entitled to recover. Substantial performance means performance of all the essential elements necessary to accomplish the purpose of the contract. *See, e.g., W.E. Erickson Construction, Inc. v. Congress-*

*Kenilworth Corp.*, 115 Ill. 2d 119, 126, 503 N.E.2d 233, 236-37 (1986).

The purchasing agent made detailed findings regarding the parties' dealings under the contract, including various ways in which the County claimed that Teldata's performance was not up to snuff. Report at 8-12, 14-15. The purchasing agent concluded as follows:

> As is often the situation, both parties contributed to the problem presented for arbitration. Teldata failed to perform as promised. The personnel assigned to the project did not possess the necessary expense. With the exception of Mr. Bianchi, the staff assigned to the County was not included in the Key Personnel section of the contract. They did not supply the promised reports and summaries in number, nor on time. They did not perform the complete audit. They did not provide a complete demarcation study of the County equipment and circuitry. And, these failures over time gave the County sufficient reason to distrust their ability to manage or participate in sensitive negotiations with SBC and other telecom providers. The County failed to sound the alarm to Teldata management and/or complain about the qualify of the personnel and work performed. As the work of the project triggered new problems, such as the poorly handled negotiation session with SBC, communication and the working relationship between the parties shut down.

Report at 20. Based on these findings, the County contends that Teldata cannot prove that it substantially performed.

The purchasing agent made no finding on the question of whether Teldata's performance failed to measure up to the requirement of "substantial performance" (which, in fairness to the purchasing agent, arguably is not a purely factual question but rather one calling for the application of law to the facts). But there is a threshold question whether the alleged deficiencies in performance, even if claimed by the County to be significant, can be used to deny or limit Teldata's recovery.

There are two aspects to Teldata's claim for commissions under the contract: its claim for commissions on the credits that the County has already obtained from SBC (Count 1), and its

7

claim for commissions on additional credits that have been offered by SBC and might be given in the future (Count 2). With regard to the former claim, the Court does not see how the County can retroactively seek to deny Teldata commissions on the credits already given based on purported defects in performance that the County never mentioned until long after the credits were secured.

As noted earlier, the contract contained a provision stating that Teldata would be considered in default if it failed to cure a material breach within ten days after the County gave written notice of the breach. Contract ¶ GC-31. In the event of a failure to cure, the County was entitled to terminate the contract for cause. Contract ¶ GC-32. But it is undisputed that the County never notified Teldata of any breach and thus that Teldata was never given the opportunity to cure the purported breach. And the County does not contend that it terminated the agreement under the "material breach" provision in paragraph GC-32.

Instead, when it terminated the contract, the County did so under a the "termination for convenience" provision, which did not require cause as a prerequisite. Contract ¶ GC-35. The County's termination letter made no mention of any default or breach by Teldata, instead stating that Teldata had "completed its obligations" under the contract. Pl. Ex. 31.

Given these circumstances, the Court cannot agree with the proposition that the County may retroactively declare a breach, at least with regard to the credits it had obtained from SBC before it terminated the contract with Teldata. There is nothing in the purchasing agent's report that supports a contention that those credits were in any way affected by the performance deficiencies that the purchasing agent found in his report. Even were that not the case, the fact of the matter is that these credits were obtained, which itself undercuts any notion that Teldata

8

failed to substantially perform, at least with regard to the work that led to those credits. Perhaps a claim could be made that Teldata's alleged failure to perform prevented the County from getting more, but even were this so, that would not be a proper basis to deny compensation for credits that were already in the bank. The County is not entitled to summary judgment on the already-provided credits based on Teldata's alleged failure to substantially perform.

The second part of Teldata's claim concerns the additional credits that SBC has offered, but which the County has not yet accepted. Again, it is not entirely clear whether the alleged performance deficiencies can be used to deny Teldata compensation entirely or in part. The "termination for convenience" provision under which the County terminated the contract, as noted above, entitled Teldata to compensation "based upon an estimate of the services/goods actually performed/supplied by the Contractor to the date of termination." Contract ¶ GC-35. Paragraph GC-35 does not provide a standard for "estimating" the value of Teldata's performance.

The contract also contains a general provision entitling Teldata, in the event of termination by the County, to the agreed upon commissions on any applications for refund made prior to the termination, so long as certain requirements are met. Contract ¶ III. It appears undisputed that the amounts still under discussion between the County and SBC all involve from the same "franchise discount" issue that Teldata first raised with SBC as far back as March or April 2001. *See* Def. LR 56.1 Stmt. ¶¶ 45, 46, 50 (referring to correspondence from Teldata to SBC regarding the 50% franchise agreement discount). Because the request for a refund in this regard was made by Teldata long before it was terminated, it may be that under paragraph III, it is entitled to be paid for any resulting refunds that are due. But neither side has attempted to

9

reconcile paragraph III with paragraph GC-35, and as a result the Court is not now able to determine what standard applies under paragraph GC-35 to determine the value of Teldata's performance.[3]

Even if the deficiencies found by the purchasing agent can be used to deny or limit Teldata's recovery of commissions on the credits that have been offered but not yet accepted, the purchasing agent's findings do not allow the Court to conclude as a matter of law that Teldata failed to substantially perform. First, the purchasing agent made no findings regarding the significance of Teldata's performance failures or how, if at all, those failures actually affected the County's ability to obtain refunds. Second, there is evidence, even considering the purchasing agent's findings, from which a reasonable determination could be made that Teldata substantially performed. Specifically, the County stated in its termination letter that Teldata had "completed its obligations under the contract." Pl. Ex. 31. This, along with the fact that the County made payment to Teldata on a portion of the credits that SBC has already provided, would permit a reasonable inference that Teldata had substantially performed.

The County also argues that Teldata's acceptance of payment of $351,803.46 in September 2002 constituted an accord and satisfaction of its claims. An accord and satisfaction requires "a bona fide dispute; an unliquidated sum; consideration; a shared and mutual intent to compromise the claim; and execution of the agreement." *Saichek v. Lupa,* 204 Ill. 2d 127, 135, 787 N.E.2d 827, 832 (1002). The element of mutual intent is the most significant aspect of the inquiry. *Id.; see also, Solomon v. American Nat'l Bank & Trust Co.,* 243 Ill. App. 3d 132, 134-

---

[3] One thing that *is* clear is that the standard for estimating the value of Teldata's performance is not a dispute over the facts that was subject to determination by the purchasing agent.

10

35, 612 N.E.2d 3, 5 (1993). A transaction amounts to an accord and satisfaction of a claim "only where both parties intend it to have that effect." *Holman v. Simborg*, 152 Ill. App. 3d 453, 456, 504 N.E.2d 967, 969 (1987).

The purchasing agent made no findings on the issues pertinent to the accord and satisfaction issue. Based on the evidence of record, the County is not entitled to summary judgment on this defense. When a payment of less than the entire amount claimed is tendered and accepted, "it will not constitute an accord and satisfaction of the entire claim unless it can be demonstrated that the creditor intended to accept it as full satisfaction." *Id.* An executive of Teldata testified at the hearing before the purchasing agent that he did not intend for the payment to be full satisfaction of his company's claims, 1/26/04 Hearing Tr. 87-92, and the County's representative responsible for dealing with Teldata likewise testified that the County and Teldata "agreed to disagree" on the point. 1/27/04 Hearing Tr. 211.

For these reasons, the Court denies the County's motion for summary judgment as to Counts 1 and 2. Having said that, the request for an accounting in Count 2 is likely moot, and Count 2 is best considered as simply a claim for commissions on the not-yet-provided credits offered by SBC. A claim for accounting, to be viable, requires a showing of a need for discovery. *See Calderon v. Southwestern Bell Mobile Systems, LLC*, No. 02 C 9134, 2003 WL 22340175, *4 (N.D. Ill. Oct. 10, 2003) (citing *Mann v. Kemper Financial Cos.*, 237 Ill. App. 3d 967, 981, 618 N.E.2d 317, 327 (1992)). It is likely that Teldata has, through discovery in the present case, now obtained the information it needs to determine how much, if any, remains due. *Id.*

The County is entitled to summary judgment on Count 3, its claim for breach of an

implied covenant of good faith and fair dealing. Teldata has not argued this point in response to the County's motion, likely because it is well established that Illinois does not recognize an independent cause of action for breach of an implied covenant of good faith. *See, e.g., Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 524-25, 675 N.E.2d 897, 903 (1996).

The Court denies the County's request for summary judgment on Count 4, Teldata's *quantum meruit* claim. It is true that under Illinois law, a plaintiff cannot prevail on claims for breach of contract and *quantum meruit* arising from the same set of facts, as that would allow recovery of both expectation and reliance damages. *See Industrial Specialty Chemicals v. Cummins Engine Co.*, 918 F. Supp. 1173, 1180 (N.D. Ill. 1996) (citing *Murray v. Abt Assocs., Inc.*, 18 F.3d 1376, 1379 (7th Cir. 1994)). But this principle does not apply to Teldata's *quantum meruit* claim, for as explained by Teldata, the claim arises from the County's contention that some of the credits obtained from SBC involved charges that were outside the scope of the parties' written contract but that the County asked Teldata to address. *See* Pl. Reply at 17. Thus the existence of that contract is no basis to preclude *quantum meruit* recovery.

## 2. Teldata's motion for summary judgment

As explained above, Teldata contends it is entitled to recover commissions on the credits that SBC agreed to provide as of December 2001, and on the additional credits that SBC has offered but that are still being negotiated by the County (Counts 1 and 2). In the event the County can show that certain of those credits involve billing that was outside the scope of the written contract, Teldata seeks recovery of commissions on a *quantum meruit* theory (Count 4).

The purchasing agent's findings are insufficient to entitle Teldata to judgment on any of these claims. As discussed earlier, the Court has rejected, as unsupported by the record or the

purchasing agent's report, the County's contention that payment of the remaining commission claimed to be due on the credits that SBC had provided as of December 2001 should be denied or limited based on based on deficiencies in Teldata's performance. The accord and satisfaction defense, however, involves disputed facts – or at least disputed inferences – that remain to be determined. And in any event, the purchasing agent's findings are insufficient to allow the Court to determine the amount owed; as the Court has indicated, the record contains conflicting figures regarding the credits that had been provided as of December 2001.

Teldata is likewise not entitled to summary judgment on its claim regarding the credits offered by SBC but not yet accepted by the County. As noted above, the standard for estimating the value of Teldata's performance is not entirely clear. And if the standard allows the Court to take into account the alleged deficiencies in performance, the Court has not been provided a basis upon which it could determine how those deficiencies should affect the amount, if any, Teldata is entitled to recover. Finally, the County contends that awarding commissions on amounts not yet provided would be inappropriate, because the offer by SBC is contingent on the County making future concessions, *see* Def. Mem. at 20, which could make valuation of the offer difficult or impossible. These questions preclude entry of summary judgment in Teldata's favor on the not-yet-provided credits.

## Conclusion

The Court grants in part and denies in part both parties' motions for summary judgment as stated in this Memorandum Opinion and Order [docket # 21-1, 28-1]. The case is set for a status hearing on January 10, 2005 at 9:30 a.m. Principal counsel for both sides are directed to

appear at the status hearing.

                                                                      MATTHEW F. KENNELLY
                                                                      United States District Judge

Date:   December 28, 2004